IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 8:05CR258 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| BENJAMIN RODRIGUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

This case was before me for sentencing on February 1, 2006. Disturbing information was presented to me about the alleged conduct of Kim Bunjer, the Assistant United States Attorney who was prosecuting this case.[1] As a result, I continued the matter on my own motion. I now explain myself in greater detail.

### I. BACKGROUND

After the defendant entered his plea of guilty, the presentence report in this case set the base offense level at 34 for 2.43 kilograms of methamphetamine.[2] (PSR ¶ 24.) Pursuant to Rule 11(c)(1)(C), the plea agreement set the base offense level at 32.[3] As

---

[1]Since Ms. Bunjer has not had an opportunity to respond, I make no decision regarding the truth or falsity of the information. I am inclined to think that there is an innocent explanation, but we shall see.

[2]This amount was the same amount set forth in the "Prosecution Report" that may have been withheld from the probation officer by Ms. Bunjer and the case agent. (Court's Ex. 1 (February 1, 2006).)

[3]Filing 20, ¶ 12. This paragraph mistakenly refers to cocaine base. On February 1, 2006, the lawyers stipulated that the correct reference was to a mixture or

is my practice, I deferred acceptance of the plea agreement pending submission of the presentence report.

After the presentence report was drafted, the defendant objected to it because the PSR did not accept the base offense level set out in the plea agreement. I issued tentative findings (filing 26) setting the objection for hearing. In those tentative findings I stated in very stark terms that the government should be prepared to explain the reason for the Rule 11(c)(1)(C) plea agreement, as it appeared to be inconsistent with the facts and the PSR. (Filing 26 ¶ 2.) Those tentative findings concluded by stating that I "require[d] government's counsel to give close attention to this issue." (Id.)

After I issued the tentative findings, Ms. Bunjer belatedly filed the government's statement of position. It was cursory and unclear, to wit:

> Plaintiff objects to Paragraphs 24 and those that relate to drug quantity in the Revised Presentence Investigation Report and Addendum. The United States believes the most readily provable amount of methamphetamine attributable to Mr. Rodriguez is between 500 grams and 1.5 kilograms. The only methamphetamine the United States has is what was seized from Mr. Arriaga, and his anticipated testimony is that 4 ounces of that was for Rodriguez. The rest of the evidence is statements of co-conspirators that the United States believes would show Mr. Rodriguez was involved in redistributing methamphetamine from these testifiers. Plaintiff anticipates offering no evidence at sentencing, other than to rebut or meet any evidence or testimony offered by Defendant.

(Filing 27.)

---

substance containing methamphetamine.

On February 1, 2006, the date set for sentencing, I conferred in my chambers at noon with Julie S-Voss, the United States Probation Officer (USPO) assigned to this case.[4] She had requested a private conference with me because of her concerns about Ms. Bunjer's conduct. Essentially, Ms. Voss recounted that: (1) Ms. Bunjer had promised to provide the police reports to Ms. Voss on several occasions but had never done so; (2) Ms. Bunjer had later told Ms. Voss that the "file was lost"; (3) the case agent, Mr. Chitwood, did not agree with the amount set forth in plea agreement, but he would not provide Ms. Voss with the reports without Ms. Bunjer's approval; (4) through a DEA agent in a related case, and apparently unknown to Ms. Bunjer and Mr. Chitwood, Ms. Voss was able to obtain the police reports; and (5) those reports contradicted the base offense level set forth in the plea agreement. Ms. Voss provided me with copies of the police reports.

At 1:00 PM, I then commenced the previously scheduled sentencing hearing. To my surprise, Ms. Bunjer was not present.[5] Without prior notice to me, she sent another prosecutor to handle the case for her. I voiced my concerns about Ms. Bunjer's alleged conduct, and directed that she respond by affidavit to written questions.[6] I also received into evidence the reports that Ms. Voss had provided me.[7] I indefinitely continued the sentencing proceeding until I had Ms. Bunjer's response and an opportunity to consider that response.

---

[4]One of my career law clerks attended the meeting and took notes.

[5]Ms. Bunjer is located in Omaha. That may account for the fact that she asked a Lincoln AUSA to attend the sentencing hearing which was held Lincoln. However, given the stern directions in my tentative findings about requiring a full explanation of the plea agreement, her absence seemed odd.

[6]Court's Exhibit 2 (February 1, 2006).

[7]Court's Exhibit 1 (February 1, 2006).

-3-

## II.  DISCUSSION

The law is clear.   A USPO has an affirmative statutory obligation to independently investigate and report to the judge the facts relevant to sentencing. <u>See, e.g.</u>, 18 U.S.C. § 3552(a); Fed. R. Crim. P. 32(c)&(d); <u>United States v. Coney</u>, 390 F. Supp. 2d 844, 848 & n.9 (D. Neb. 2005) (stating that the probation officer is required to independently investigate the facts and independently calculate the Guidelines despite the provisions of a Rule 11(c)(1)(C) plea agreement and further noting that the probation officer is required to critically evaluate the impact of any such plea agreement on the Guidelines);   <u>United States v. Cirrillo-Davilla</u>, 124 F. Supp. 2d 1140, 1143 (D. Neb.) ("In the District of Nebraska, probation officers are instructed to look beyond the government's version of the offense and any factual stipulations of the parties so that the court is independently advised of the real facts."), <u>aff'd</u>. <u>sub nom.</u>, <u>United States v. Franco-Martinez</u>, 271 F.3d 764 (8th Cir. 2001).

It is also clear that the Attorney General of the United States has directed all prosecutors to "disclose . . . to the court, including the Probation Office" all "readily provable facts" that are "relevant to calculations under the Sentencing Guidelines. Memorandum of the Attorney General <u>Regarding Policy On Charging of Criminal Defendants</u> (Subject: Department Policy Concerning Charging Criminal Offenses, Disposition of Charges, and Sentencing), at 5 (Department of Justice, September 22, 2003), *available at* <u>www.usdoj.gov/opa/pr/2003/September/03_ag_516.htm</u>.   In particular, the Attorney General has instructed that "federal prosecutors may not 'fact bargain,' or be party to any plea agreement that results in the sentencing court having less than a full understanding of all readily provable facts relevant to sentencing." (<u>Id.</u>).

In a similar vein, every judge in this court requires every prosecutor, defense lawyer, and defendant to sign a standardized petition to enter a plea of guilty when a defendant tenders a guilty plea.  In particular, that petition to enter a plea of guilty, like the one Ms. Bunjer signed in this case (filing 19 at 16), requires prosecutors to

certify that the defendant "is pleading guilty to a charge which adequately reflects the seriousness of the <u>actual offense behavior and the relevant conduct of the defendant as defined by the U.S. Sentencing Commission</u>. . . ."  (Emphasis added.)  This certification is not a technicality, but a solemn representation by a government lawyer upon which we sentencing judges heavily rely.

Therefore,

IT IS ORDERED that:

1.   All federal prosecutors are directed to fully cooperate with the United States Probation Office regarding the preparation of presentence reports.  In particular, federal prosecutors shall fully and completely reveal all facts relevant to sentencing and promptly provide probation officers with all documents reasonably requested by the probation officers.[8]

2.   On or before February 17, 2006, Ms. Bunjer shall submit and file in the court file a sworn affidavit answering the following eight questions:

> Did you tell Ms. Voss, the USPO, that  you would send her the police reports in this case?
>
> Did you send her the police reports in this case?
>
> Did you tell Ms. Voss that the file had been lost?
>
> Did you instruct Investigator Jeff Chitwood not to provide reports to Ms. Voss?
>
> Were you aware that Investigator Chitwood refused to provide the prosecution report to Ms. Voss?

---

[8]Of course, a protective order may be sought by a prosecutor in an unusual case.

Were you aware that Investigator Chitwood did not agree with the amount of drugs agreed to in the plea agreement?

Have you read either the Attorney General's Memo Regarding Policy on Charging of Criminal Defendants (September 22, 2003) or the Attorney General's Memorandum Concerning Sentencing Recommendations (July 28, 2003) as those memos relate to "Honesty in Sentencing"?

If your answer to paragraph [question] 7 is "yes," please explain in detail whether your conduct in this case conformed to the Attorney General's policy regarding "Honesty in Sentencing"?[9]

3.     This memorandum and order shall be provided to counsel of record in this case.  My chambers shall also provide a copy to Michael Heavican, United States Attorney, David Stickman, Federal Public Defender, James Rowoldt, Chief United States Probation Officer, and to USPO Voss.

February 2, 2006.                    BY THE COURT:

                                     s/Richard G. Kopf
                                     United States District Judge

---

[9]These questions were also provided to counsel on February 1, 2006.  (Court's Ex. 2.)

-6-